UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BENJAMIN RUBIN,

**Plaintiff,**

    v,

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:18-cv-630-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff Benjamin Rubin filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on April 4, 2018, denied Mr. Rubin's applications for disability insurance benefits and for supplemental security income. Mr. Rubin has now moved for judgment on the pleadings (Doc. 12), and the Commissioner has filed a similar motion (Doc. 14). For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I.  BACKGROUND

    Plaintiff's applications for disability insurance benefits and supplemental security income were filed on March 31, 2015. He alleged that he became disabled on April 19, 2014 due to multiple medical conditions including an enlarged heart, carpal tunnel syndrome, high blood pressure, sleep apnea, shortness of breath, asthma, high cholesterol, and memory problems. Plaintiff was 48 years old on the date his applications were filed.

    After initial administrative denials of his applications, Plaintiff appeared at an administrative hearing held by video on October 6, 2017. The Administrative Law Judge issued an unfavorable decision on October 31, 2017. She concluded that Plaintiff suffered from several severe impairments, including degenerative disc disease, bilateral carpal tunnel syndrome, hypertension, and reported anxiety and depression. According to the ALJ, these impairments limited Plaintiff to the performance of a reduced range of light work. He could occasionally lift and carry up to twenty pounds, could frequently lift and carry up to ten pounds, could stand or walk for six hours and sit for six hours in a workday, could occasionally climb, balance, stoop, kneel, crouch, or crawl, and should avoid concentrated exposure to extreme work hazards like

dangerous moving machinery and unprotected heights. He could perform frequent, but not continuous repetitive, manipulation with both hands. From a mental standpoint, he could understand, remember, and carry out instructions for routine, repetitive tasks commensurate with unskilled work, could sustain attention and concentration for at least two-hour segments in an eight-hour day, could tolerate brief and superficial work-related, task-oriented contact with others, could adapt to changes in the work place for routine, repetitive tasks, and could not perform fast-paced or high production goal work.

At the administrative hearing, a vocational expert, Mr. Preston, was asked whether a person with that work capacity could do any of Plaintiff's past jobs, which included machine assembler, loader, sanitation worker, packer, and barber. He said that none of those jobs would be available. Mr. Preston was then asked if such a person could do any jobs which existed in significant numbers in the national economy. He said that Plaintiff could work as a garment sorter, cleaner, or routing clerk. The ALJ accepted this testimony, along with testimony about the number of these jobs which exist in the national economy, and found that because Plaintiff could perform substantial gainful activity during the period of time at issue, he was not disabled within the meaning of the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, asserts that there are two reasons why the ALJ's decision should be reversed and the case remanded. First, he argues that the ALJ's residual functional capacity finding was not supported by substantial evidence. Second, he contends that the ALJ's credibility finding is both unsupported by substantial evidence and the product of legal error.

## II. THE KEY EVIDENCE

As discussed below, the dispositive issue in this case is actually what evidence is not in the record, as opposed to the evidence that is present. The evidence concerning Plaintiff's various physical conditions is relevant to that issue, however, and the Court will summarize it briefly.

First, Plaintiff testified at the administrative hearing about his various physical limitations. He said that he stopped working in 2014 due to problems with his hands. Although he needed carpal tunnel surgery, he had not had it because his blood pressure was too high. He also suffered from pain in his hand and knees due to arthritis and had shortness of breath which he attributed to an enlarged heart. He had headaches as well as neck and back pain radiating to his legs. He lived alone. Plaintiff said that he had problems sleeping due to pain and he suffered from suicidal thoughts. He took medication for anxiety and to help him sleep. He described his usual daily activity as sitting around and being in pain. Other people assisted him with his housework and with shopping. Plaintiff's medications had side effects including drowsiness and nausea. He believed he could not sit or stand for more than 20 minutes at a time before he would be in pain, and he could not carry a gallon of milk.

The file contains a substantial number of medical records. Beginning no later than 2014, Plaintiff was treated for, among other conditions, nonischemic cardiomyopathy, shortness of breath, bilateral carpal tunnel syndrome (which included numbness in his hands), hypertension, and difficulty sleeping. He was taking medications for cardiomyopathy but did not show signs of congestive heart failure, although his ejection fraction was decreased to 35-40%. In 2015, he also received treatment for low back pain and left foot pain, including a referral to physical therapy. A CT scan done in 2014 showed moderate disc space narrowing at C5-6 accompanied by bilateral foraminal stenosis. He was treated for various other non-chronic ailments between 2014 and 2017. None of the notes indicated any specific functional limitations. Significantly, Plaintiff was not sent for a consultative physical examination (he did undergo a consultative mental examination), nor did any state agency physician comment on his physical capabilities.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

# IV. DISCUSSION

In his first argument, Plaintiff asserts that an ALJ did not make a proper residual functional capacity finding on this record because it contains no medical opinions supporting the physical functional capacity which the ALJ attributed to Plaintiff. He contends that simply using the raw medical data without any explanation from a medical source as to how that data translates into a claimant's functional capacity is reversible error.

The ALJ provided this explanation for her residual functional capacity finding. After summarizing the medical records, she stated that Plaintiff's "conditions appear to be treatable as needed and would not appear to prevent working." (Tr. 26). She then discounted Plaintiff's testimony about debilitating symptoms and concluded that "claimant could be as functional as he wished to be." (Tr. 27). Consequently, she said he was capable of light lifting as long as he did not have to use his hands on a continuous repetitive basis. She further found that his written statement that he played video games was "inconsistent with significant problems using the hands." (Tr. 29). The ALJ also discounted the notion that Plaintiff's back impairment was disabling, noting that "the overall record does not corroborate work-precluding impairments." *Id*.

The ALJ then supported her residual functional capacity - a restriction to a reduced range of light work - by stating the following:

> The undersigned based the physical residual functional capacity on the totality of the evidence. Mindful of the claimant's chronic and acute conditions, including reported pain and carpal tunnel syndrome, no evidence indicates that he could not lift/carry twenty pounds occasionally and ten pounds frequently. He could sit about six of eight hours, and stand/walk about six of eight hours. He could occasionally climb, balance, stoop, kneel, crouch, and crawl. He should avoid concentrated expose to work hazards .... The claimant could perform frequent (no continuous/repetitive) manipulations with his hands, bilaterally. The claimant is treated with medical management and monitoring for acute and ongoing chronic health conditions. The nonsevere and severe impairments alone and in combination would not require further restriction.

(Tr. 30).

It is often the case that an ALJ will arrive at a residual functional capacity finding which is either not entirely in agreement with the available opinion evidence or, as in this case, made without the benefit of any opinion evidence at all. At times, that can be error. Plaintiff relies on a line of cases (*see, e.g., Tompkins v. Comm'r of Social Security*, 2019 WL 442452 (W.D.N.Y. Feb. 5, 2019), citing *Dennis v. Colvin*, 195 F.Supp.3d 469 (W.D.N.Y. 2016)) that appear to follow the decision in *Deskin v. Comm'r of Social Security*, 605 F. Supp. 2d 908 (N.D. Ohio 2008) and which arguably apply a bright-line rule that if there are no medical opinions in the record addressing the issue of residual functional capacity, an ALJ may never make such a finding

because that would constitute the ALJ's "playing doctor" - that is, interpreting the raw medical data and translating it into findings as to what level of activity a claimant is capable of performing. The Commissioner, by contrast, relies on decisions such as *Matta v. Astrue*, 508 Fed. Appx. 53 (2d Cir. 2013) for the proposition that the ALJ must simply make an RFC finding which is consistent with the record as a whole.

There is a substantial amount of discussion in the case law - especially in district court decisions within the Sixth Circuit, which is the Circuit in which *Deskin* was decided - about whether *Deskin* correctly interprets social security law and also whether it really sets forth an absolute rule that an ALJ may never make an RFC finding in the absence of some medical opinion evidence as to functional capacity. The same Magistrate Judge who authored *Deskin* later stated that the "rule" of that case applies in only two narrow situations - where there is no opinion evidence in the record at all, and where there is a substantial amount of medical evidence post-dating the only opinion evidence which both calls the earlier opinion into question and has not been interpreted by any medical source. *See Kizys v. Comm'r of Soc. Sec.*, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011). *Deskin* itself also cited favorably the decision in *Manso-Pizarro v. Sec'y of HHS*, 76 F3d 15 (1st Cir. 1996), which holds that in some cases, the evidence is so clear and shows so little impairment that an ALJ does not require a medical opinion in order to formulate a residual functional capacity finding. Further, as the Court in *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017) explained, after discussing both *Deskin* and numerous cases which appear to follow it,

> the social security statute does not contemplate a bright line rule requiring the ALJ to base his or her RFC finding on a physician's opinion. For example ... 20 C.F.R. § 404.1527(d) provides that the final responsibility for deciding issues such as the claimant's residual functional capacity is reserved to the Commissioner. However, the district court cases cited above also do not require the ALJ to entirely base his or her RFC finding on the opinion of a physician—they require the ALJ's RFC assessment be supported by substantial evidence and not merely on the ALJ's own medical interpretation of the record.

And there is some case law stating flatly that *Deskin* was simply wrongly decided. *See, e.g., Henderson v. Comm'r of Social Security*, 2010 WL 750222, *2 (N.D. Ohio Oct. 21, 2011)("The Court finds ... that *Deskin* ...is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals").

Interestingly, the Commissioner appears to have chosen not to wade into this particular thicket. The Commissioner's memorandum does not mention *Deskin* at all or address the various lines of cases which interpret it. Rather, it cites to numerous cases where there *was* opinion evidence about the claimant's functional capacity, but where the ALJ ultimately rejected in favor of different findings - something an ALJ is clearly permitted to do if the evidence, such as treatment notes and findings, is "relevant to [the claimant's] ability to perform sustained gainful activity." *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. Jan. 8, 2017).

That approach is common and has been followed by this Court - *see, e.g., Smith v. Comm'r of Social Security*, 337 F.Supp.3d 216, 222 (W.D.N.Y. 2018) - but it does not directly address the situation present here.

This Court was faced with a similar issue in *Ford v. Comm'r of Social Security*, 2019 WL 4297873 (W.D.N.Y. Sept. 11, 2019). In that case the Court did not definitively resolve the issue, but found that the facts of that case permitted the ALJ to make a residual functional capacity finding notwithstanding the lack of medical opinion evidence on the subject. In doing so, however, the Court pointed out that the sparsity of the medical evidence, the types of medical conditions from which the claimant suffered, and the extremely generous benefit of the doubt given to the claimant when formulating the residual functional capacity finding, were an unusual combination of factors. The Court said:

> This convergence of facts is atypical, and it would not appear that allowing an ALJ to come up with a residual functional capacity finding on this record would undercut the general proposition set forth in *Deskin*, and with which this Court agrees, that "[w]here the ALJ proceeds to make the residual functional capacity decision in the absence of a medical opinion as to functional capacity from any medical source ... there exists cause for concern that ... substantial evidence may not exist" to support that finding. *See Deskin*, 605 F. Supp. 2d at 911.

*Ford, supra*, at *5.

The facts of this case are different. Plaintiff has a number of medical conditions whose physical effects are not completely obvious to a lay person. In particular, he has bilateral carpal tunnel syndrome which is severe enough to require surgery and which caused him to stop working. Whether it is severe enough to prevent him from performing the frequent manipulation of which the ALJ thought him capable is a medical question which, on this record, has no medical answer. He also has a documented cervical spinal condition which manifested itself in numbness in his arms and may affect his ability to reach overhead. How this condition operates in conjunction with his carpal tunnel syndrome to affect the use of his hands and arms is, again, not addressed in the record. The mere fact that he listed playing video games as a hobby does not provide a definitive answer to these questions or constitute a substantial basis for the specific residual functional capacity found by the ALJ, particularly in light of Plaintiff's testimony that he had no feeling in his fingertips and could not use a computer keyboard because of issues with is left hand. (Tr. 73-74). All of these factors indicate that this is a case where medical opinion evidence, at least for a baseline reference, is necessary, and that the ALJ formulated a residual functional capacity which was not supported by the evidence. (In fact, she phrased her finding in the negative, saying that "no evidence indicates that [Plaintiff] could not" do the activities she found him capable of, when the real question is what capabilities the evidence supports). This is an error requiring remand.

Plaintiff has also raised issues about gaps in the medical records and about the ALJ's

credibility finding. The former issue can be resolved on remand, and the Court sees no reason to address the latter in light of its finding that Plaintiff's first claim of error is well-taken. Of course, on remand, the ALJ should adhere to the controlling regulations and case law concerning how to assess the consistency of a claimant's statements with all of the other evidence of record, including, but not limited to, the objective medical evidence.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 12), **DENIES** the Commissioner's motion (Doc. 14), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**